IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANGELA S.,[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Civil Action No. 7:19-CV-480 |
| | ) |
| ANDREW SAUL, COMMISSIONER, | ) |
| SOCIAL SECURITY ADMINISTRATION | ) |
| | ) |
| **Defendant.** | ) |

### REPORT AND RECOMMENDATION

Plaintiff Angela S. ("Angela") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381-1383f. Angela alleges that the Administrative Law Judge ("ALJ") erred by failing to properly account for her moderate impairments in concentration, persistence, or pace, by failing to provide a function-by-function analysis of her physical impairments, and by improperly assessing her subjective allegations. I conclude that the ALJ's decision is supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** Angela's Motion for Summary Judgment (Dkt. 14) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 17).

### STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Angela failed to demonstrate that she was disabled

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Angela filed for SSI on April 28, 2015, claiming that her disability began on February 1, 2009, later amended to April 28, 2015. R. 17, 45, 279 . Angela filed a previous claim for SSI, which was denied by ALJ opinion on November 18, 2013. R. 17, 88–105. This court affirmed the Commissioner's denial of Angela's claim on September 30, 2016. See Smith v. Colvin, No. 7:15-cv-234, Dkt. 24, 2016 WL 5718241, (W.D. Va. Sept. 30, 2016). The state agency denied Angela's current application at the initial and reconsideration levels of administrative review. R. 111–50. On March 27, 2018, ALJ Jeffrey Schueler held a hearing to consider Angela's claim for SSI. R. 56–87. Counsel represented Angela at the hearing which included testimony from

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

vocational expert Asheley Wells. Id. On July 24, 2018, the ALJ entered his decision analyzing Angela's claim under the familiar five-step process[3] and denying her claim for benefits. R. 17–34.

The ALJ found that Angela suffered from the severe impairments of bilateral knee osteoarthritis, supraventricular tachycardia, obesity, schizoid personality disorder, depression, anxiety, insomnia, and cognitive disorder. R. 20. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 21–25. The ALJ concluded that Angela retained the residual functional capacity ("RFC") to perform a range of light work. R. 25. Specifically, the ALJ found that Angela can occasionally climb or crawl; frequently balance, stoop, kneel or crouch; and should avoid moderate exposure to hazards such as moving machinery or heights. Id. The ALJ determined that Angela needs a low-stress job, defined as having only occasional decision-making or changes in the work setting, with occasional interaction with co-workers and no interaction with the public. Id.

The ALJ determined that Angela could not perform her past relevant work as a hand packager, deli worker and dishwasher, but that she can perform other jobs that exist in the national economy, such as housekeeper or laundry worker. R. 32–33. Thus, the ALJ concluded that Angela was not disabled. R. 34. Angela appealed the ALJ's decision and on May 8, 2019, the Appeals Council denied her request for review. R. 1–4. This appeal followed.

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curium) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## ANALYSIS

### Mental Impairments

Angela suffers from depression and anxiety but has sought minimal mental health treatment. In Angela's prior 2013 claim, ALJ Schueler determined that despite moderate impairments with social interaction and concentration, persistence or pace, Angela was capable of low-stress work, defined as a job with only occasional decision-making or change in work setting, and only occasional interaction with co-workers or the public. R. 94. Angela argued that those mental health restrictions failed to properly accommodate her moderate mental health limitations. This court disagreed, finding that substantial evidence supported the ALJ's RFC and affirming the Commissioner's denial decision. See Smith v. Colvin, No. 7:15-cv-234, Dkt. 24, 2016 WL 5718241 (W.D. Va. Sept. 30, 2016).

In Angela's current disability claim, ALJ Schueler again found that despite moderate impairments with social interaction and concentration, Angela could perform low-stress work with only occasional decision-making or change in work setting and only occasional interaction with co-workers or the public. R. 25. Angela once again asserts that the RFC does not properly accommodate her moderate limitations with social interaction and concentration. Pl. Br. Summ. J. p. 18–25.  Upon review, I find that substantial evidence supports ALJ Schueler's conclusion that Angela's mental health impairments are properly accommodated by limitations to low-stress work and occasional interaction with co-workers or the public. As set forth in detail below, there is no set doctrine that a low-stress work limitation is insufficient to accommodate a moderate impairment of concentration; rather, the law charges the ALJ with the responsibility to explain how the limitations in Angela's RFC accommodate her moderate mental health impairments.

4

Here, the ALJ's explanation is sufficient to create the necessary logical bridge and is supported by substantial evidence.

SSR 96-8P[4] requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. 1996 WL 374184 (S.S.A. July 2, 1996); Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

Here, the ALJ's decision adequately explains why a restriction to low-stress work with occasional decision-making or changes in the work setting properly accommodates Angela's moderate limitation with concentration. In Mascio v. Colvin, the Fourth Circuit held that an ALJ does not generally account for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. The court noted, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would

---

[4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

account for a claimant's limitation in concentration, persistence, or pace." Id. at 638. The court noted, however, that the ALJ may find that the concentration, persistence or pace limitation would not affect a claimant's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. 780 F.3d at 638. The court found error in Mascio because the ALJ did not explain why Mascio's moderate limitation in concentration, persistence, or pace did not translate into a limitation in his RFC.

The Mascio decision does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace must always translate into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty of explanation to adequately review the evidence and explain the disability decision, especially where, as the ALJ held in Mascio, a claimant's concentration, persistence or pace limitation does not affect the claimant's ability to perform simple, unskilled work. Indeed, in Shinaberry v. Saul, No. 18-2096, 2020 WL 908887, at *4 (4th Cir. Feb. 26, 2020), the court emphasized that Mascio "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC. On the contrary, we explained that an 'ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC." Id. (quoting Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015)). The Fourth Circuit noted that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." Id. (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The ALJ has the responsibility to address the evidence of record

6

that supports that conclusion and ensure that the hypothetical presented to the vocational expert includes all the limitations set forth in the RFC.

Here, substantial evidence supports the ALJ's decision that despite Angela's limitations with concentration, she can perform low-stress work with occasional decision-making or changes in the workplace. In step three of the opinion, the ALJ determined that Angela had moderate impairments of understanding, remembering or applying information, social interaction and maintaining concentration. R. 22–23. The ALJ found no limitation with maintaining persistence or pace. R. 24.

Regarding concentration, persistence and pace, the ALJ noted that Angela generally did not complain to her treating practitioners about issues in those areas, and often reported adequate symptom control from psychiatric medications when she took them as prescribed. R. 23. During a consultative examination, Angela was unable to repeat a series of five digits forward, but could repeat three digits backward, and was able to complete serial 7s. R. 1107. The ALJ noted that Angela's treatment providers did not observe that she was distractible or slow, and that she reported watching TV and reading for pleasure, which require some concentration and persistence, although she also reported falling asleep with those activities. The ALJ noted that Angela reported daily activities that require some concentration, persistence and pace such as driving, cooking, caring for pets and working part-time at various jobs. R. 24. Thus, the ALJ determined that Angela has a moderate limitation with concentration that would limit her to a low-stress job, defined as only occasional decision-making or changes in the work setting. The ALJ found that Angela did not have any limitation relating to persistence or pace. Id.

In step four of the decision, the ALJ noted that Angela alleged she was unable to work due to mental health issues including major depressive disorder, borderline intellectual

7

functioning, anxiety disorder and personality disorder, and had trouble being around groups of people she did not know. R. 25. Angela testified that she had not taken any medications for her mental health issues for over a year and was not in counseling. Id. She reported frequent crying spells, trouble with focus and motivation, feeling overwhelmed and trouble with changes in routine. Id.

Angela reported that in a typical day she would make her bed, shower, cook simple meals, play with her cat, try to read, watch television, and spend time at her friend's house. Angela had no problems with personal care but needed reminders to take her medication. She was able to drive short distances, shop in stores, pay bills, and count change. R. 26.

The ALJ reviewed Angela's treatment records and noted that Angela was diagnosed with depressive disorder and anxiety disorder in 2014 and reported that her depression and anxiety improved with Zoloft and Trazadone. R. 26, 469, 470. While taking her medication, Angela was in "good spirits" had a "cheery mood," and was sleeping better. R. 757–58. The ALJ noted that Angela had no specialized treatment for her mental health conditions after October 2015. R. 28. The ALJ also noted that when Angela treated for her physical impairments with her primary care provider, she frequently denied anxiety, depression and sleep disturbances. Id. The ALJ acknowledged that Angela occasionally had an anxious or dysphoric mood and complained of anxiety during an emergency room visit on January 9, 2017. R. 28. The ALJ noted that Angela never presented to the emergency room solely due to psychological concerns and was never recommended for inpatient psychiatric treatment. R. 29. Accordingly, the ALJ stated, "[f]or these reasons, the claimant's restriction to low-stress work with limits on interaction adequately accommodates for her supportable complaints of mental health restrictions." Id.

8

On November 6, 2015, state agency psychologist Alan Entin, Ph.D., reviewed Angela's records and determined that she had moderate impairments with social functioning and maintaining concentration, persistence or pace. R. 122. Specifically, Dr. Entin found that Angela was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from her psychologically based symptoms and perform at a consistent pace. R. 127. Dr. Entin noted that Angela's affective and anxiety symptoms, borderline intellectual functioning and characterological traits affect her ability to perform some work tasks. Despite these impairments, Dr. Entin found that "the evidence in file suggests that she remains able to perform [simple unskilled] work with limited social contact." R. 127.

On February 2, 2016, state agency psychologist Joseph Leizer, Ph.D., reviewed Angela's records and concurred with Dr. Entin's conclusion that Angela has moderate limitations with social functioning and concentration, persistence or pace but maintains the ability to perform simple unskilled work. R. 147.

On May 11, 2018, Gilbert Vance, Ph.D., examined Angela, reviewed her records and provided a psychology report. R. 1112. Dr. Vance diagnosed major depressive disorder, recurrent, moderate. R. 1108. Dr. Vance found that Angela would benefit from medication management and counseling for her depression. Dr. Vance determined that Angela needed work with simple, repetitive tasks, but could maintain regular attendance in the workplace, perform work activities on a consistent basis and complete a normal workday or work week without interruptions. Id. Dr. Vance found that Angela would be able to accept instructions from supervisors but would need special or additional supervision due to her learning difficulties. He

9

noted that Angela struggled in the past to interact effectively with co-workers and the public, and that she would likely have difficulty handling the usual stresses encountered in competitive work. R. 1109.

Dr. Vance completed a medical source statement of ability to do work-related activities and noted that Angela would have moderate difficulties understanding, remembering and carrying out complex instructions and making judgments on complex work-related decisions due to her depression and learning difficulties. R. 1110. He noted that Angela is moderately impaired in her ability to interact with the public and respond appropriately to usual work situations and changes in a routine work setting, noting that she had problems in past jobs. R. 1111.

The ALJ reviewed Drs. Entin and Leizer's opinions and gave them great weight. The ALJ noted that Angela had minimal mental health treatment early on in the period of review and significantly improved from the treatment. R. 31. The ALJ noted that Angela frequently denied mental health symptoms to her primary care provider. The ALJ found that the opinions of Drs. Entin and Leizer are consistent with the opinion of Dr. Vance. Id.

The ALJ reviewed Dr. Vance's opinion and gave it moderate weight, agreeing that Angela's diagnoses and occasional dysphoric or anxious mood support her need for low-stress work with limitations in interaction. R. 31. The ALJ did not adopt Dr. Vance's conclusion that Angela would require special supervision, finding nothing in Dr. Vance's notes or Angela's treatment history supporting that limitation. Id. The ALJ noted that Angela did not argue or testify that she needed special supervision. The ALJ noted that Angela testified that she quit her prior jobs due to physical complaints and difficulty being around others, but was not fired due to employment issues or told that she required special supervision to perform job duties. R. 32.

Thus, the ALJ concluded that the RFC accounts for Angela's mental limitations that are consistent with the record.

The ALJ gave little weight to the opinion of Angela's brother, Anthony Smith, dated September 13, 2012. R. 30. Mr. Smith is a "certified life coach" and "Christian counselor," and determined that Angela has a personality disorder and avoids social relationships and situations which has kept her from getting and/or maintaining employment. R. 441. Mr. Smith stated that Angela "is able to live a happy fulfilling life, but her ability to adapt to social situations will continue to keep her from holding a job." Id. The ALJ noted that Mr. Smith is not an acceptable medical source, and his opinion was rendered over two years before Angela's alleged onset date.

The ALJ also considered his prior 2013 decision and gave it great weight as it relates to Angela's mental health issues, noting that evidence post-2013 does not show a significant change in her psychological health or functional ability. R. 30. The ALJ's 2013 decision included the same mental health limitations of low-stress work, defined as a job with only occasional decision-making or change in work setting, and only occasional interaction with co-workers or the public. R. 94.

Thus, the ALJ concluded that the RFC is supported by the objective medical evidence of record, Angela's daily activities, and the opinions of the consultative examiners and state agency physicians and psychologist. R. 32.

The ALJ's finding that Angela's moderate impairment in concentration is accommodated by a limitation to low-stress work with occasional decision-making or occasional changes in the work setting is supported by Angela's mental health treatment records and the opinions of the consultative and reviewing physicians in the record. As indicated by the ALJ, Angela's symptoms of depression and anxiety were significantly improved with medication management

11

in 2015, and she had no further mental health treatment after that date. Although Angela reported anxiety, there is no indication in the record that it would prevent Angela from performing low-stress work. There is further no evidence supporting moderate impairments with persistence or pace. Angela's subjective statements do not indicate any issues in those areas, and Dr. Vance's examination likewise did not find concerns.

The ALJ's findings are also supported by all of the medical source opinions in the record. Specifically, the state agency reviewing psychologists both concluded that despite her impairments, Angela was capable of performing simple, unskilled work. R. 127, 147. Likewise, Dr. Vance determined that Angela could perform work with simple, repetitive tasks, and could maintain regular attendance, perform work on a consistent basis and complete a normal workday without interruptions from her psychological symptoms. R. 1108. The ALJ accommodated Dr. Vance's finding that Angela would likely have difficulty handling the usual stresses encountered in competitive work by limiting her to low-stress work.

Angela asserts that the ALJ did not adequately explain why she does not have any limitation related to persistence or pace, and that the ALJ failed to specifically address her ability to sustain work over an eight-hour workday. Pl. Br. Summ. J. p. 19, 21, 24. Angela notes that Drs. Entin and Leizer found that she had moderate limitations with persistence or pace and the ALJ gave their opinions great weight. Id. However, Drs. Entin and Leizer found that despite a moderate limitation with concentration, persistence or pace, Angela was capable of performing simple, unskilled work. Further, Dr. Vance specifically stated that Angela was capable of performing work on a consistent basis and complete a normal workday and workweek. R. 1111. Dr. Vance's opinion states that Angela can perform work on a sustained basis over a normal workday, and the ALJ explained why he gave it significant weight.

12

Thus, unlike in Mascio, the court here is not left to guess at the ALJ's decision-making process. The ALJ relied upon the conclusions of Drs. Entin, Leizer and Vance that despite her moderate impairments in concentration, Angela can perform simple, unskilled work tasks.  The ALJ discussed those opinions in his decision and gave them great weight. R. 30–32.  The ALJ accommodated Angela's limitations by providing an RFC of "low-stress work (defined as a job with only occasional decision-making or changes in work setting)" (R. 94), which he included in the hypothetical question given to the vocational expert. R. 81.  See Shinaberry, 2020 WL 908887, at *4 (ALJ properly relied on evaluation of state agency psychologist and consultative examiner that the mental limitation to simple, routine, and repetitive tasks accounted for the claimant's moderate limitations in concentration, persistence, or pace). Notably, no other treating, examining or reviewing physicians assessed more restrictive non-exertional limitations than those set forth in the RFC.

**Social Interaction**

Angela also asserts that the ALJ failed to explain how her moderate impairment with social interaction is accommodated by a limitation to occasional interaction with co-workers and the public. Pl. Br. Summ. J. p. 18.  Angela does not assert what additional restrictions are required to accommodate her social interaction impairment, nor does she provide any evidence to support a claim that she requires more stringent restrictions on her social interaction.

 In step three of the opinion, the ALJ noted that Angela generally interacted normally with her treating and examining providers, was cooperative and in no distress, and had no deficiencies with eye contact, speech or conversation. R. 23.  The ALJ noted that Angela went out in public to shop and attend meetings at a firehouse and reported no problems to her treating practitioners. She generally did not complain of serious problems with interpersonal interaction

13

to her treating practitioners. The ALJ noted that Angela reported socializing with her family and friends in and outside of the home, lives with her boyfriend, and has a close relationship with her brother, boyfriend and at least one friend. The ALJ determined that "[d]ue to the claimant's reports of anxiety around others in conjunction with her occasional anxious mood at appointments and her mental health diagnoses, the undersigned finds that the claimant can tolerate only occasional interaction with co-workers and no interaction with the public." R. 23. As noted above, the ALJ gave great weight to the opinions of Drs. Entin and Leizer that Angela had a moderate impairment with social functioning and could perform work with "limited social contact." R. 127, 147. Likewise, the ALJ gave moderate weight to the opinion of Dr. Vance that Angela would be able to accept instructions from supervisors but struggled in the past to interact effectively with co-workers and the public, and that she would likely have difficulty handling the usual stresses encountered in competitive work. R. 31, 1109. The ALJ did not adopt Dr. Vance's conclusion that Angela would require special supervision, finding nothing in Dr. Vance's notes or Angela's treatment history supporting that limitation. Id. The ALJ noted that Angela did not argue or testify that she needed special supervision, and that she quit her prior jobs due to physical complaints and difficulty being around others, but was not fired due to employment issues or told that she required special supervision to perform job duties. R. 32.

      The ALJ gave little weight to the opinion of Angela's brother, Anthony Smith, that Angela has a personality disorder and avoids social relationships and situations which has kept her from getting and/or maintaining employment. R. 441. The ALJ noted that Mr. Smith is not an acceptable medical source, and his opinion was rendered over two years before Angela's alleged onset date.

14

Thus, the ALJ limited Angela to work with occasional interaction with co-workers and no interaction with the public. The ALJ's decision provides an explanation of his conclusion that Angela's limitations with social functioning are accommodated by a limitation to occasional interaction with coworkers and no interaction with the general public, and the ALJ's decision is supported by substantial evidence in the record.

### **Function-by-Function**

Angela also asserts that the ALJ did not determine how her impairments affect her ability to work on a function-by-function basis. Specifically, Angela alleges that the ALJ failed to make specific findings regarding whether her impairments would cause her to experience episodes of pain necessitating breaks and how often those breaks would occur. Pl. Br. Summ. J. p. 26.

A function-by-function analysis requires the ALJ to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impairments affecting her ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting her conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8P, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity

15

to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Angela likens this case to the ALJ's decision in Monroe v. Colvin, where the ALJ failed to sufficiently address the claimant's complaints of narcolepsy when developing the RFC. 826 F.3d at 188. In Monroe, the claimant testified that he would lose consciousness about two or three times per day and would need to take several breaks during the day because of fatigue. The ALJ found that Monroe's sleep apnea and narcolepsy were severe impairments, and he concluded that Monroe's impairments could reasonably be expected to cause his claimed symptoms. However, the ALJ failed to make specific findings about whether Monroe's sleep apnea or narcolepsy would cause him to experience episodes of loss of consciousness or fatigue necessitating breaks in work and if so, how often these events would occur. Rather, the ALJ simply concluded that Monroe was capable of light work and that Monroe's claimed symptoms were "not credible to the extent they are inconsistent with" the RFC the ALJ identified. Monroe, 826 F.3d at 188.

Here, Angela's need to take breaks during the day is not a severe impairment, but rather is a complaint she made during the administrative hearing that the ALJ found unsupported by the record. Angela testified at the administrative hearing that she often gets tired due to an

16

underactive thyroid. R. 67. Angela also testified that she lies down during the day "every few days," for "15, 20 minutes." R. 69–70.

The ALJ found that Angela's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." R. 28. The ALJ noted that Angela is obese and has osteoarthritis of the knees and tachycardia. R. 29. The ALJ noted that Angela's testimony that she had pain in her right knee and could only stand for a few hours at a time, but could sit without physical limitations. R. 25. Angela testified that she would lie down for 15-20 minutes a day. R. 26. The ALJ reviewed Angela's treatment records for knee pain, which reflected localized tenderness and swelling but full range of motion, no crepitus, weakness, or instability. R. 28, 996–97. Angela had minimal joint space narrowing medially, and was prescribed a knee brace, ibuprofen and Tylenol. R. 996–97, 1064. The ALJ noted that Angela was not prescribed physical therapy, pain management, prescription pain medication and declined a pain medication injection. R. 29. Angela did not continue to complain of symptoms and regularly had a normal gait, strength and range of motion. The ALJ noted that Angela did not complain of her feet swelling to her treatment providers. Id. The ALJ gave great weight to the opinions of the consultative and reviewing physicians that Angela was capable of light exertion work. R. 30–31. Thus, the ALJ limited Angela to light exertion work with occasional climbing or crawling, frequent balancing, stooping, kneeling or crouching. R. 29.

The ALJ provided a detailed summary of Angela's impairments, medical records, testimony and opinion evidence. The ALJ discussed Angela's symptoms, her resulting limitations, the medical evidence, medical opinions, Angela's testimony, her credibility and

17

conflicting medical evidence. R. 25–32. The ALJ is not required to make specific findings related to Angela's subjective assertion that she must lie down every few days. See Shinaberry, 2020 WL 908887, at *6 (ALJ did not err in refusing to fully credit claimant's subjective statements regarding her physical limitations where claimant pointed to no medical evidence in support of a limitation.). The ALJ was only required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of the medical and non-medical evidence, Angela's alleged symptoms, and the medical opinions of record. R. 25–30. This narrative discussion allows this court to see how the evidence in the record—both medical and nonmedical—supports the ALJ's RFC determination. Thus, unlike in Monroe, the ALJ gave a sufficient explanation of why Angela's testimony that she needs to lie down every few days for 15-20 minutes did not translate into limitations in the RFC. Because I was not "left to guess" at how the ALJ reached his RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

### Subjective Allegations

Angela asserts that the ALJ erred by rejecting her mental health complaints due to minimal treatment in the record, claiming that the ALJ ignored her testimony that she had no health insurance and was unable to afford her medications. Pl. Br. Summ. J. p. 27–28. Although the ALJ noted that Angela had minimal mental health treatment, the ALJ also noted Angela's improvement in mental health symptoms with medication, her denial of mental health symptoms to her primary care provider, the lack of significant abnormalities on her mental health examinations, and the state agency psychologist and consultative examiner's opinions relating to Angela's ability to perform work. R. 28, 30, 31. Thus, Angela's minimal treatment was only one of a number of factors considered by the ALJ in forming Angela's RFC, and the ALJ's failure to

specifically credit Angela's testimony that she had no health insurance and could not afford medications does not deprive the decision of substantial evidence.

Angela also argues that the ALJ erred by discounting her physical impairments due to routine and conservative treatment without pointing to other treatment she should have pursued. Pl. Br. Summ. J. p. 28.  Likewise, Angela's routine and conservative treatment is only one of many factors appropriately considered by the ALJ in forming the RFC.  As noted in detail above, the ALJ's physical RFC is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** that an order be entered **AFFIRMING** the final decision of the Commissioner, **DENYING** Angela's motion for summary judgment, **GRANTING** the Commissioner's motion for summary judgment, and **DISMISSING** this case from the Court's docket.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record.  Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof.  Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such

objections, including the waiver of the right to appeal.

                                                Entered: May 11, 2020

                                                *Robert S. Ballou*

                                                Robert S. Ballou
                                                United States Magistrate Judge